IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                                                                          PLAINTIFF,

v.                                                        CIVIL ACTION NO. 1:19-CV- 915-LG-RHW

$83,400.00 UNITED STATES CURRENCY,                                    DEFENDANT PROPERTY.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through its United States Attorney and the undersigned Assistant U.S. Attorney for the Southern District of Mississippi, brings this Verified Complaint for Forfeiture *in rem,* in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules") and the Federal Rules of Civil Procedure, and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action by the United States seeking forfeiture of $83,400.00 United States Currency (the "defendant property") seized from Lendarious Sanderio Quadre Hayes. The defendant property is subject to forfeiture under 21 U.S.C. § 881 and 18 U.S.C. §§ 981(a)(1)(A) and (C) because the defendant property was involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

## THE DEFENDANT IN REM

2.     The defendant property consists of $83,400.00 United States Currency, which was seized by the U.S. Drug Enforcement Administration on May 26, 2019, in Picayune, Mississippi, within the Southern District of Mississippi, Southern Division.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355.

4. Venue is proper in the Southhern Division of the Southern District of Mississippi pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a), because the acts and/or omissions giving rise to the forfeiture occurred in this district and/or pursuant to 28 U.S.C. § 1395(b), because the defendant property was found and seized in this District.

## BASIS FOR FORFEITURE

5. The defendant property is subject to forfeiture under 21 U.S.C. § 881 and 18 U.S.C. §§ 981(a)(1)(A) and (C) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

6. The Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and 21 U.S.C. § 881 make subject to forfeiture to the United States any proceeds derived, and any facilitating property, from any knowing violation of 21 U.S.C. §§ 841(a)(1), 846, and 848, which is drug distribution, drug conspiracy, and continuing criminal enterprise.

7. Title 18, United States Code, Section 981(a)(1)(A) makes subject to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property. Title 18, United States Code, Section 981(a)(1)(C) makes subject to forfeiture to the United States any property, real or personal, which constitutes or is traceable to a violation of any offense constituting

"specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense.

8. Both 21 U.S.C. § 881(h) and 18 U.S.C. § 981(f) provide that all right, title, and interest in property described in 21 U.S.C. § 881(a) and 18 U.S.C. § 981(a) shall vest in the United States upon commission of the act giving rise to forfeiture under 21 U.S.C. § 881 and 18 U.S.C. § 981.

## FACTS AND CIRCUMSTANCES

9. A detailed account of the facts and circumstances of the search and seizure at issue, and the basis for this instant forfeiture action, is set out in the Declaration of DEA Task Force Agent Adam Gibbons, attached hereto as Exhibit "A" and fully incorporated herein by reference.

## CLAIM FOR RELIEF

10. Plaintiff United States requests that the Clerk of Court for the U.S. District Court for the Southern District of Mississippi issue an Arrest Warrant *in rem* for the arrest of the defendant property under Supplemental Rule G(3)(b), which the United States will execute upon the defendant property located in the custody of the DEA under 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

11. Plaintiff United States prays that process issue to enforce the forfeiture of the defendant property and that all persons having an interest in the defendant property be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the defendant property to the United States for disposition according to law and that this Court grant the United States such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

**RESPECTFULLY SUBMITTED**, this the 29th day of November, 2019.

                            Respectfully submitted,

                            D. MICHAEL HURST, JR.
                            United States Attorney

By:     /s/ J. Wesley Webb
                            J. WESLEY WEBB (MSB# 104495)
                            Assistant United States Attorney
                            Office of the United States Attorney
                            SOUTHERN DISTRICT OF MISSISSIPPI
                            501 East Court Street, Suite 4.430
                            Jackson, MS 39201
                            Telephone:   601.965.4480
                            Facsimile:    601.965.4409
                            E-mail:        James.Webb2@usdoj.gov

## VERIFICATION

I, Adam Gibbons, hereby verify and declare under penalty of perjury that I am a Task Force Agent with the Drug Enforcement Administration (DEA), that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint for Forfeiture *in rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States of America, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a DEA Task Force Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this the 27th day of November, 2019.

_____
ADAM GIBBONS
Task Force Agent
Drug Enforcement Administration

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DECLARATION IN SUPPORT OF VERIFIED COMPLAINT**

Under 28 U.S.C. § 1746, I, Adam Gibbons, Task Force Agent, Drug Enforcement Administration ("DEA"), United States Department of Justice, make the following unsworn declaration, under the penalty of perjury, pertinent to the above-styled and numbered case:

**I.     Introduction**

1.     This declaration is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to a valid traffic stop.  There is probable cause to believe that the property seized was involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses), and is therefore subject to forfeiture under 21 U.S.C. § 881(a) and 18 U.S.C. § 981(a)(1)(A) and (C).  This declaration is based upon my personal knowledge and experience obtained as case agent in this case and information I have received from other law enforcement officials.

**II.    Declarant's Background and Experience**

2.     I have been employed by the Gulfport, Mississippi Police Department since July 2000, and have been assigned to the DEA as a fulltime Task Force Agent since January 2012.  I am currently assigned to the DEA High Intensity Drug Trafficking Area Task Force (HIDTA) located in Gulfport, Mississippi, where I investigate criminal and civil violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*.  I have received specialized training in laws relating to the enforcement of the Controlled Substances Act and have testified in judicial proceedings for

**EXHIBIT A**

violations of the Controlled Substances Act.

3. Since my assignment as a DEA Task Force Agent, I have participated in debriefing dozens of defendants, informants, and witnesses who had personal knowledge about narcotics, narcotics trafficking, and methods of narcotics distribution. I have participated in all aspects of a drug investigation, including conducting surveillance, executing search warrants, executing arrests, working with confidential informants, and using court-ordered eavesdropping devices. As a result of my assignment, and by virtue of my employment as a law enforcement officer, I have performed and continue to perform various duties, which include but are not limited to:

   a. Working as an undercover agent in the course of investigating drug trafficking;

   b. Working as a surveillance agent to detect and record movement of persons known to be or suspected of being involved in illegal drug trafficking; and

   c. Working as a case agent, directing investigations of various illegal drug traffickers and their organizations, and investigations involving complex conspiracies in which numerous drug traffickers, located in various states and foreign countries, were illegally importing, possessing, and distributing illegal drugs within the United States.

4. Through training and experience, and through the training and experience of other narcotics agents with whom I have talked, I have learned the following:

   a. Criminal organizations, including large-scale drug traffickers, maintain and handle large amounts of United States currency in order to finance their ongoing illicit businesses;

   b. It is common practice for large-scale drug traffickers to hide contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

   c. Persons involved in large-scale drug trafficking conceal, in their residences, vehicles and businesses, caches of drugs, large amounts of currency, and evidence of financial transactions relating to the obtaining and hiding of large sums of money acquired from engaging in narcotics-trafficking activities;

**EXHIBIT A**

d. It is a common practice for large-scale drug traffickers to travel to distribution areas to facilitate their trafficking; after purchasing drugs, the drug trafficker will transport, or cause to be transported, drugs to other areas for distribution; and the methods of transportation include, but are not limited to, rental and private automobiles;

e. Traffickers use vacuum-sealed bags, tape and/or rubber bands to bundle their illegal proceeds for transport back to Mexico or source destinations. By vacuum-sealing the money, drug traffickers attempt to make it difficult for law enforcement K9 units to detect trace amounts of illegal drugs, which have touched the drug proceeds and by vacuum sealing and/or using tape to package the proceeds, it condenses the package of bulk currency, allowing it to be more easily concealed. The bundled cash may be concealed in clothing or luggage or hidden in mechanical or electronic traps within the vehicle, depending on the sophistication of the smugglers' organization. When the currency is bundled by rubber bands, it is common for the bundles to be in thousand-dollar increments;

f. Money couriers, individuals specializing in the transportation of money rather than narcotics, take a percentage of the illegal proceeds that they transport;

g. As a general rule, illegal drugs are transported from Mexico into the United States, while drug proceeds are transported from the United States into Mexico;

h. Couriers for drug traffickers continually buy, trade, and sell vehicles in an attempt to elude law enforcement. Couriers believe by obtaining a newly registered vehicle, any past wrongdoings or information obtained by law enforcement will not be found; couriers' vehicles often have a "lived in look" due to long trips with few stops; this "lived in look" can consist of excessive amounts fast food wrappers, open and unopened soft drinks or water bottles, energy drinks, an ice chest, etc.;

i. It is common practice for drug traffickers to pay their couriers based on the type and amount of narcotics and/or the amount of narcotics proceeds transported; and because new couriers are not normally trusted with bulk currency or bulk narcotics, if a courier is found in possession of bulk currency or narcotics, it is often an indicator the courier is well-established and trusted within an organization;

j. Couriers for drug trafficking organizations often use multiple cellular phones. Much like continually changing vehicles and registrations, couriers and drug traffickers believe changing cellular phones will help elude law enforcement;

**EXHIBIT A**

k.  The Courts have recognized unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular trafficking in controlled dangerous substances. *See United States v. Barnes*, 604 F.2d 121, 147 (2nd Cir. 1979).

### III. Items to be forfeited to the United States of America

$83,400.00[1] U.S. Currency, seized on Sunday, May 26, 2019, Interstate 59 South, at 22-mile marker, Picayune, Mississippi, from Lendarious Sanderio Quadre HAYES.

### IV. Facts and Circumstances

5. At approximately 4:24 p.m., on Sunday, May 26, 2019, Mississippi Highway Patrol Trooper Christa Groom stopped a 2009 Pontiac G6, bearing Mississippi Tag LBG987, for speeding on Interstate 59 South at the 22-mile marker. The posted speed is 70 mph; Trooper Groom's radar confirmed that the vehicle was traveling 84 mph. The driver (later determined to be Lendarious Sanderio Quadre HAYES) of the vehicle was unable to produce a driver's license or identification, and provided Trooper Groom with a name (Davion Bell), three different dates of birth, and inconsistent statements regarding his identity travel plans (later all determined to be false)[2]. In

---

[1] Upon the initial hand count of the funds, Trooper Groom stated that the $83,400 U.S. Currency seized totaled "approximately $84,100." The amount of the captioned defendant property is based on the official count, which the DEA obtained at The First, A National Banking Association.

[2] The driver initially told Trooper Groom that he had no driver's license or proof of insurance, but identified himself as Davion Bell, with a date of birth of March 13, 2002. "Bell" stated: he was 17 years old; headed to New Orleans; and that he attended Mississippi State University for two years and played football. When Trooper Groom was unable to find "Bell" in the database, she returned to confirm the spelling of his name and his date of birth. "Bell" gave the same name, but stated his date of birth was March 10, 2002, and that he and his passengers were going back home to Baton Rouge, Louisiana. When Trooper Groom was still unable to find a record for "Bell," she returned again and asked "Bell" to exit the vehicle, and stand in front of her patrol car. She asked the driver for his information for a third time, and he gave the same name, but now stated his date of birth was March 3, 2002, before changing it to March 10, 2002. When Trooper Groom confronted him about the inconsistent statements, the driver admitted to lying about playing for Mississippi State and being in college.

**EXHIBIT A**

Trooper Groom's opinion, the driver appeared overly nervous for a routine traffic stop, and was visibly shaking.

6. At Trooper Groom's request, Pearl River County Sheriff's Deputy Jodi Smith arrived at the scene to assist with the traffic stop.

7. During routine threshold questioning, Trooper Groom smelled the odor of marijuana coming from inside the vehicle. Trooper Groom had already asked HAYES to exit the vehicle; now she requested the two occupants, identified as Deondray HOPSON and Kentarius SHADWICK, to exit the vehicle. When Trooper Groom told the driver about the odor of marijuana, he denied having any, but indicated that the front seat passenger (SHADWICK) possessed marijuana. In patting down SHADWICK, Deputy Smith recovered 10 grams of marijuana from SHADWICK's waistband and another 3 grams on the ground near where SHADWICK was standing. Trooper Groom and Deputy Smith then conducted a probable cause search—to which the driver had consented[3]—and found 50 dosage units of Alprazolam 2 mg in a plastic baggie, along with HOPSON's identification card under the lining of a car seat in the back seat next to where HOPSON had been sitting. Continuing the vehicle search, Trooper Groom discovered a suitcase in the trunk of the vehicle. When Trooper Groom asked to whom the suitcase belonged, none of the occupants claimed it. Trooper Groom searched the suitcase and discovered a large amount of United States currency—tightly stacked and concealed in the pant legs of a pair of jeans inside the suitcase. Trooper Groom contacted Mississippi Bureau of Narcotics Agent James Pacheco and also requested the assistance of Gulfport's DEA HIDTA Group.

---

[3] The driver denied having any marijuana, but when Trooper Groom asked who did have marijuana, the driver pointed toward SHADWICK and mumbled. The driver then told Trooper Groom "you can look in it and look around; there isn't anything," which Trooper Groom interpreted to be a consent to search the vehicle.

**EXHIBIT A**

8. Trooper Groom arrested the driver for the traffic and drug violations and called a tow truck to impound the vehicle. The two occupants, HOPSON and SHADWICK, were arrested on drug possession charges[4]. Deputies Tyler Tate and Chip Berry transported SHADWICK AND HOPSON to the Pearl River County Adult Detention Center, along with the driver, and were instructed to run the driver's fingerprints on the AFIS database to identify the driver. At approximately 7:30 p.m., Agent Pacheco informed Trooper Groom that the driver had been identified as Lendarious Sanderio Quadre HAYES, and was wanted by the United States Marshals and the DEA Fairview Heights (Illinois) Resident Office on a federal indictment for cocaine trafficking and money laundering[5].

9. Shortly thereafter, I arrived at the Detention Center. Trooper Groom relinquished six cellular phones and a Dell laptop computer that she had recovered from the passenger compartment of the vehicle. HAYES indicated the phone with number (601) 513-1865 belonged to him. HOPSON indicated that cellular phone number (601) 616-6124 belonged to him. When asked, no one claimed any of the other electronic devices.

10. At approximately 8:16 p.m., I attempted to interview HAYES, but he invoked his Miranda Rights and requested a lawyer. HAYES was booked and processed on the fugitive warrant and transferred to the U.S. Marshals, in order for him to make his initial appearance and arraignment in the Southern District of Illinois.

---

[4] These charges—all misdemeanors—against HAYES, HOPSON, and SHADWICK, are pending as of the date of this filing.

[5] *United States v. Jeffrey Taylor, et al.*, 3:18-cr-30063-NJR (S.D. of Ill.). The arrest warrant was issued on February 21, 2019.

**EXHIBIT A**

11. After reading him the Miranda warning, I next interviewed HOPSON, who stated the vehicle belonged to him[6] and that HAYES was his cousin. HOPSON further stated that HAYES paid him $200.00 to "rent the vehicle," and he thought they were going to Baton Rouge to visit family. HOPSON stated they were coming from Meridian, Mississippi, and he believed they were going to come right back. HOPSON stated at the time of the stop, he was sitting in the back seat of the vehicle. I questioned HOPSON about the money in the vehicle's trunk, but HOPSON said he was unaware of the money, and denied ownership of the suitcase. HOPSON indicated he needed a lawyer to go further in the interview, so I concluded the interview. I discovered HOPSON was also a target of the DEA Fairview Heights cocaine trafficking investigation. As a result of the May 26 traffic stop, HOPSON was booked on misdemeanor drug crimes and released the same day.

12. I then interviewed Kentarius SHADWICK, who stated he was sitting in the front passenger seat at the time of the stop. SHADWICK stated he possessed a user amount of approximately 12 grams of marijuana on his person. SHADWICK stated he knew HOPSON because he previously dated HOPSON'S sister, but he didn't know the real name of the vehicle's driver (HAYES). SHADWICK stated they were coming from Meridian, Mississippi, and destined for Baton Rouge. SHADWICK also stated he knew nothing of the money found in the trunk of the car, and also denied ownership of the suitcase. Like HAYES and HOPSON, SHADWICK was also a target of the DEA Fairview Heights investigation. SHADWICK appeared to have no criminal history and was booked on misdemeanor drug crimes and released the same day.

---

[6] The vehicle's Mississippi Tags and registration returns to Linda K. Cooper, 3576 Sgt. Fritz Burk Road, Meridian, Mississippi 39301. HOPSON explained that he was unable to get a car titled in his own name, and that Cooper was a nominal owner.

**EXHIBIT A**

13. Agents investigating HAYES' criminal activity learned that HAYES was involved in at least 140 suspicious money transactions. Agents learned that Walmart and Moneygram had prohibited HAYES from using their money transfer services because HAYES could not provide sufficient documentation regarding the money they sought to transfer. Between January 1, 2015, and May 4, 2018, HAYES' had suspicious transactions totaling $91,579.50.

## IV.  CONCLUSION

14. Based upon these facts, I believe that Trooper Groom had probable cause for the traffic stop on Sunday, May 26, 2019, Interstate 59 (South), at 22 mile marker, Picayune, Mississippi for speeding. The driver, Lendarious Sanderio Quadre HAYES, and occupants, Deondray Lavonta HOPSON Jr. and Kentarius Antoine SHADWICK, were detained for a narcotics investigation based on the odor of marijuana coming from inside the vehicle. During a consented and probable cause search of the vehicle, misdemeanor amounts of marijuana and Xanax were located inside the cabin of the vehicle, and $83,400.00 in U.S. Currency was located in the trunk of the vehicle. Six cell phones—only two of which were claimed by the occupants—and a laptop were also recovered from the vehicle. HAYES, positively identified at the Pearl River County Jail via his fingerprints, was discovered to be a fugitive from DEA Fairview Heights. While at the Pearl River County Jail, occupants HOPSON and SHADWICK, denied any knowledge of the currency found in the vehicle. HAYES refused to give a statement and invoked his rights, requesting legal representation.

15. I believe, based on the above-listed facts and circumstances, there is probable cause to seize and forfeit the $83,400.00 in U.S. Currency. I reasonably believe the money was intended to facilitate or used to further a drug crime, or is directly related to drug proceeds of HAYES or his associates, all in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy),

**EXHIBIT A**

and was being transmitted in violation of 18 U.S.C. § 1956(a) (money laundering) and 18 U.S.C. § 1960 (unlicensed money transmitting businesses), and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a) and 18 U.S.C. § 981(a)(1)(A) and (C).

16. I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this __27__ day of November, 2019.

_____
Adam Gibbons
Task Force Agent
Drug Enforcement Administration

**EXHIBIT A**

℅JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

1:19-cv-915-LG-RHW

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$83,400.00 United States Currency

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Pearl River County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
J. Wesley Webb, U.S. Attorney's Office
501 East Court Street, Suite 4.430, Jackson, MS 39201  (601) 965-4480

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. 881 and 18 U.S.C. 981(a)(1)(A) and (C)

Brief description of cause:
Civil forfeiture of $83,400.00 U.S. Currency seized on May 26, 2019, during a traffic stop of Lendarious Hayes

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____    DOCKET NUMBER _____

DATE: 11/29/2019

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____